**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| S. Kimberly Findlay | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| vs. | : | NO. |
| The Investment Center, Inc., Dominic Vricella, | : | |
| Anthony Faiola,  I.C. Advisory Services, Inc., | : | |
| I.C. Financial, Inc.,  Ralph James DeVito, | : | |
| Douglas Andrew Wright,  Professional Consulting | : | JURY TRIAL DEMANDED |
| Group, LLC,  North Shore Investment Fund, LLP, | : | |
| North Shore Investment Group, LLC,  North | : | |
| Shore Asset Management, LLC,  Ronald Ianieri, | : | |
| Huan Pham, and Gregory Wolfe | : | |
| Defendants. | : | |

# COMPLAINT

## Introduction

This case involves the Defendants' fraudulent sale of securities and investment advisory services to the Plaintiff, and related tortious misconduct.  Plaintiff seeks compensatory and punitive damages against all of the Defendants, jointly and severally, arising out of their egregiously fraudulent misconduct, violations of federal, Pennsylvania and New Jersey securities laws, violation of Pennsylvania and New Jersey consumer protection laws, and breaches of numerous common law duties.

## Parties and Jurisdiction

1.     Plaintiff S. Kimberly Findlay is an adult individual and citizen of the Commonwealth of Pennsylvania, residing at 83 Lynwood Drive, Chalfont, Pennsylvania 18914.

2.     Defendant Dominic Vricella ("Vricella") is an adult resident and citizen of the State of New Jersey.  On information and belief, at all times relevant, Defendant Vricella maintained a place of business at 4A Eves Drive, Suite 104, Marlton, New Jersey 08053.

3.     Defendant Anthony Faiola ("Faiola") is an adult resident and citizen of the State of New Jersey.  On information and belief, Defendant Faiola currently maintains a place of business at 1763 Rt. 70 East, Suite 302, Cherry Hill, NJ 080053, and, on information and belief, Defendant Faiola currently maintains a place of residence at 721 Beechwood Avenue, Cherry Hill, NJ 08002.

4.     Defendant The Investment Center, Inc. ("TIC") is, on information and belief, a New Jersey corporation with its principal place of business in New Jersey. On information and belief, at all times relevant, Defendant TIC maintained an office or place of business at both 4A Eves Drive, Suite 104, Marlton, NJ 08053 and 1011 Highway 22 West, Box 6915, Bridgewater, NJ 08807-6915.

5.     Defendant I.C. Advisory Services, Inc. ("ICAS") is, on information and belief, a New Jersey corporation with its principal place of business at 1011 Highway 22 West, Box 6915, Bridgewater, NJ  08807-6915.

6.     Defendant I.C. Financial, Inc. ("ICF") is, on information and belief, a New Jersey corporation with its principal place of business at 1011 Highway 22 West, Box 6915, Bridgewater, NJ 08807-6915.

7.     Defendant Ralph James DeVito ("DeVito") is, on information and belief, a citizen and resident of New Jersey, with an office or place of business at 1011 Highway 22 West, Box 6915, Bridgewater, NJ 08807-6915.

8.     Defendant Douglas Andrew Wright ("Wright") is, on information and belief, a citizen and resident of New Jersey, with an office or place of business at 1011 Highway 22 West, Box 6915, Bridgewater, NJ 08807-6915.

9.     Defendant Professional Consulting Group, LLC ("PCG") is, on information and belief, a New Jersey limited liability company with its principal place of business in New Jersey.  On information and belief, at all times relevant, Defendant PCG maintained an office or place of business at 4A Eves Drive, Suite 104, Marlton, New Jersey 08053.

10.     Defendant North Shore Investment Fund, LLP ("NSIF" or the "Hedge Fund") is, on information and belief, a New Jersey limited partnership with its principal place of business in New Jersey.  On information and belief, at all times relevant, Defendant NSIF maintained an office or place of business at 4A Eves Drive, Suite 104, Marlton, New Jersey 08053.

11.     Defendant North Shore Investment Group, LLC ("NSIG") is, on information and belief, a New Jersey limited liability company with its principal place of business in New Jersey.  On information and belief, at all times relevant, Defendant NSIG maintained an office or place of business at 4A Eves Drive, Suite 104, Marlton, New Jersey 08053.

12.     Defendant North Shore Asset Management, LLC ("NSAM") is, on information and belief, a New Jersey limited liability company with its principal place of business in New Jersey.  On information and belief, at all times relevant, Defendant NSAM maintained an office or place of business at 4A Eves Drive, Suite 104, Marlton, New Jersey 08053.

2

13.   Defendant Ronald Ianieri ("Ianieri") is, on information and belief, an adult resident and citizen of the State of New Jersey.  On information and belief, at all times relevant, Defendant Ianieri maintained a place of business at 4A Eves Drive, Suite 104, Marlton, New Jersey 08053.

14.   Defendant Huan Pham ("Pham") is, on information and belief, an adult resident and citizen of the State of New Jersey.  On information and belief, at all times relevant, Defendant Pham maintained a place of business at 4A Eves Drive, Suite 104, Marlton, New Jersey 08053.

15.   Defendant Gregory Wolfe ("Wolfe") is, on information and belief, an adult resident and citizen of the State of New Jersey.  On information and belief, at all times relevant, Defendant Wolfe maintained a place of business at 4A Eves Drive, Suite 104, Marlton, New Jersey 08053.

16.   This Court has subject matter jurisdiction over this civil action by reason of the presence of federal questions, 28 U.S.C. § 1331.

17.   This Court has subject matter jurisdiction over Plaintiff's claims under state law by reason of supplemental jurisdiction, 28 U.S.C. § 1367.

18.   Venue is proper in this district because the significant events giving rise to Plaintiff's causes of action took place in this district.

## Background Facts Concerning the Defendants and Their Involvement in this Case

19.   In December, 2003, and again in April, 2005, Plaintiff purchased limited partnership interests in Defendant Hedge Fund.  Each of the Defendants named in this action directly or indirectly caused those unlawful investments and resultant losses.

20.   Defendant TIC, either directly or through wholly-owned subsidiaries it controls, is registered as a broker-dealer and investment advisor under the laws of Pennsylvania, New Jersey and the United States.

21.   Defendant TIC is the supervising broker-dealer and investment advisory firm of Defendants Faiola and Vricella, and Defendants Faiola and Vricella conduct their investment advisory and brokerage practices under TIC's direct supervision and control, letterhead, logo, and auspices.

22.   Plaintiff's account statements, both before and after her investment in the Hedge Fund, bore the legends "Professional Consulting Group, L.L.C. – The Investment Center," and "All securities offered through The Investment Center, Inc., Bridgewater, NJ, member NASD/SIPC/MSRB."

3

23.   A description of Plaintiff's ownership of the Hedge Fund securities, describing them as components of Plaintiff's securities portfolio and describing their value, appeared over the legend, "All securities offered through The Investment Center, Inc.," thus plainly describing the Hedge Fund interests as an offering of TIC.

24.   TIC is a self-described investment advisor and acted in that capacity with respect to Plaintiff.

25.   At all relevant times, TIC provided support and training to Defendants Faiola and Vricella.

26.   At all relevant times, TIC recklessly failed to supervise the conduct of Defendants Faiola, Vricella and PCG.

27.   At all relevant times, TIC had full access to information about Plaintiff's accounts and investments, and advised Defendants Faiola and Vricella regarding strategies for client investments.

28.   TIC directly and indirectly controlled the unlawful actions of Defendants PCG, Faiola and Vricella alleged herein, and directly and indirectly induced the acts of Defendants PCG, Faiola and Vricella which constituted violations of law.

29.   Defendant ICF owns all, or substantially all, of the shares of Defendant TIC, as evidenced by TIC's Form ADV (the "TIC ADV Filing") as filed with the U. S. Securities and Exchange Commission ("SEC") and attached hereto as Exhibit 1.  In such capacity, Defendant ICF, since March of 2006 or earlier, has directly and indirectly controlled the unlawful actions of Defendants TIC, PCG, Faiola and Vricella alleged herein.

30.   Defendant ICF, since March of 2006 or earlier, directly and indirectly controlled the unlawful actions of Defendants TIC, PCG, Faiola and Vricella alleged herein, and directly and indirectly induced the acts of Defendants PCG, Faiola and Vricella which constituted violations of law.

31.   As evidenced by the TIC ADV Filing and ICAS' Form ADV (the "ICAS ADV Filing") as filed with the SEC (see Exhibit 2), Defendant Ralph DeVito ("DeVito") is a principal officer of Defendants ICAS, ICF and TIC.  In such capacity, DeVito, at all relevant times, directly and indirectly controlled the unlawful actions of Defendants ICAS, ICF, TIC, PCG, Faiola and Vricella alleged herein.

4

32.   Defendant DeVito directly and indirectly induced the acts of Defendants ICAS, ICF, TIC, PCG, Faiola and Vricella which constituted violations of law.

33.   Defendant DeVito recklessly failed to supervise the conduct of Defendants ICAS, ICF, TIC, PCG, Faiola and Vricella alleged herein.

34.   As evidenced by the ICAS and TIC ADV Filings, Defendant Douglas Andrew Wright ("Wright") is compliance officer of Defendants ICAS and TIC. In such capacity, at all times relevant, Wright directly and indirectly controlled the unlawful actions of Defendants ICAS, TIC, PCG, Faiola and Vricella alleged herein.

35.   Defendant Wright directly and indirectly induced the acts of Defendants ICAS, TIC, PCG, Faiola and Vricella which constituted violations of law.

36.   Defendant Wright recklessly failed to supervise the conduct of Defendants ICAS, TIC, PCG, Faiola and Vricella alleged herein.

37.   On information and belief, Defendants TIC and PCG employed Defendants Faiola and Vricella.

38.   Defendants PCG and TIC sent Plaintiff periodic account statements detailing the contents and balances of her accounts.

39.   Defendant PCG represented TIC as TIC's agent in connection with the sales of securities to Plaintiff and the rendering of investment advice to Plaintiff.

40.   Defendants NSIG, Vricella and Faiola were the general partners of the Hedge Fund, and, for that reason, were fiduciaries with respect to Plaintiff.

41.   Defendants Hedge Fund, Vricella, Faiola and NSIG owed a duty to Plaintiff to cause the Hedge Fund to invest in suitable securities.

42.   Defendants Hedge Fund, TIC, Vricella, Faiola and NSIG owed a duty to Plaintiff to inform her of all material facts in connection with her purchase of limited partnership interests in the Hedge Fund, and in connection with any and all decisions to continue to hold or attempt to liquidate such interests.

43.   Defendants Hedge Fund, NSIG, Faiola and Vricella were responsible for the preparation of the Private Offering Memorandum (as hereafter described and defined), and were responsible, with all other Defendants, for the misrepresentations and omissions therein.

44.    Defendants NSIG and NSAM were both investment advisors to the Hedge Fund and to Plaintiff, and, for that reason, each was a fiduciary with respect to Plaintiff.

45.    Defendants NSIG and NSAM owed a duty to Plaintiff to recommend to the Hedge Fund that it invest in suitable securities.

46.    Defendant Ianieri is a self-described "options guru." He has established and maintains the "Options University," an online site dedicated to the sale of instructional materials concerning investment in options.

47.    On information and belief, at all times relevant, Defendant Ianieri was a principal officer of Defendant NSIG, the general partner of the Hedge Fund, and a principal officer of NSAM, an investment advisor of the Hedge Fund.

48.    On information and belief, Defendant Ianieri prepared, or caused to be prepared, the initial draft of the Private Offering Memorandum (as hereafter described and defined), and was responsible, with all other Defendants, for the misrepresentations and omissions therein.

49.    Defendant Ianieri permitted and encouraged Defendants Faiola and Vricella to market limited partnership interests in the Hedge Fund by touting Defendant Ianieri's involvement in the venture. The Private Offering Memorandum ("Private Offering Memorandum") (attached hereto as Exhibit 3) represented that "[t]he success of the Partnership is expected to be significantly dependent upon the expertise of Mr. Huan Pham and Mr. Ronald Ianieri."

50.    As a principal officer of the general partner of a partnership in which Plaintiff was a limited partner, and as a broker-dealer and investment advisor, Defendant Ianieri owed a fiduciary duty to Plaintiff.

51.    As a principal officer of the general partner of the Hedge Fund, Defendant Ianieri had a duty to monitor its investments, ensure that its investments were suitable to the objectives of investing limited partners, and protect against the making of risky, radical investments likely to lead to catastrophic losses.

52.    As a principal officer of the general partner of the Hedge Fund, and as a person upon whom the investment success of the Hedge Fund depended, Defendant Ianieri was an investment advisor to the Hedge Fund and to Plaintiff.

53.    Defendant Ianieri owed a duty to Plaintiff to inform her of all material facts in connection with her purchase of limited partnership interests in the Hedge Fund, and in connection with any and all decisions to continue to hold or attempt to liquidate such interests.

54.   On information and belief, at all times relevant, Defendant Pham was a principal officer of Defendant NSIG, the general partner of the Hedge Fund, and a principal officer of NSAM, an investment advisor of the Hedge Fund.

55.   Defendant Pham permitted and encouraged Defendants Faiola and Vricella to market limited partnership interests in the Hedge Fund by touting Defendant Pham's involvement in the venture. The Private Offering Memorandum (attached hereto as Exhibit 3) represented that "[t]he success of the Partnership is expected to be significantly dependent upon the expertise of Mr. Huan Pham and Mr. Ronald Ianieri."

56.   As a principal officer of the general partner of and investment advisor to a partnership in which Plaintiff was a limited partner, Defendant Pham owed a fiduciary duty to Plaintiff.

57.   As a principal officer of the general partner of and investment advisor to the Hedge Fund, Defendant Pham had a duty to monitor its investments, ensure that its investments were suitable to the objectives of investing limited partners, and protect against the making of risky, radical investments likely to lead to catastrophic losses.

58.   As a principal officer of the general partner of the Hedge Fund, and as a person upon whom the investment success of the Hedge Fund depended, Defendant Pham was an investment advisor to the Hedge Fund and to Plaintiff.

59.   Defendant Pham owed a duty to Plaintiff to inform her of all material facts in connection with her purchase of limited partnership interests in the Hedge Fund, and in connection with any and all decisions to continue to hold or attempt to liquidate such interests.

60.   Upon information and belief, at all times relevant, Defendant Wolfe was a principal officer of Defendant NSIG, the general partner of the Hedge Fund, and of Defendant NSAM, an investment advisor of the Hedge Fund.

61.   At all times relevant, Defendant Wolfe claimed to consult with high net worth individuals about how to make money in the market.

62.   Defendant Wolfe permitted and encouraged Defendants Faiola and Vricella to market limited partnership interests in the Hedge Fund by touting Defendant Wolfe's involvement in the venture.

63.   As a principal officer of the general partner of and an investment advisor to a partnership in which Plaintiff was a limited partner, and as a broker-dealer and investment advisor, Defendant Wolfe owed a fiduciary duty to Plaintiff.

64.   As a principal officer of the general partner of and an investment advisor to the Hedge Fund, Defendant Wolfe had a duty to monitor its investments, ensure that its investments were suitable to the objectives of investing limited partners, and protect against the making of risky, radical investments likely to lead to catastrophic losses.

65.   As a principal officer of the general partner of the Hedge Fund, and as a person upon whom the investment success of the Hedge Fund depended, Defendant Wolfe was an investment advisor to the Hedge Fund and to Plaintiff.

66.   Defendant Wolfe owed a duty to Plaintiff to inform her of all material facts in connection with her purchase of limited partner interests in the Hedge Fund and in connection with any and all decisions to continue to hold or attempt to liquidate such interests.

67.   Defendants Pham, Ianieri and Wolfe, as officers and managers of the General Partner of and an investment advisor to the Hedge Fund, owed a fiduciary duty to the Hedge Fund's largest investor, Plaintiff, to disclose material adverse events, losses, and other information, both before and after Plaintiff's investments of December, 2003, and April, 2005.

68.   Defendant Vricella is a principal officer or member of Defendant PCG.

69.   Defendant Vricella was, at all times relevant, an investment advisor to Plaintiff.

70.   Defendant Vricella was, at all times relevant, licensed as a registered representative of Defendant TIC with the National Association of Securities Dealers ("NASD") and in Pennsylvania and New Jersey.

71.   Defendant Vricella was, at all times relevant, licensed to provide investment advisory services with the SEC and in Pennsylvania and New Jersey.

72.   On information and belief, Defendant Vricella was, at all times relevant, the manager of TIC's office located at 4A Eves Drive, Suite 104, Marlton, NJ 08053.

73.   Defendant Vricella admitted to Plaintiff that he, Vricella, had a duty to supervise Defendant Faiola.

74.   At all times relevant hereto, Defendant Vricella had actual and apparent authority to communicate with Plaintiff on behalf of Defendants TIC, PCG, Hedge Fund, NSIG, NSAM, Ianieri, Pham, Wolfe, and Faiola with respect to any and all matters related to Plaintiff's investments and prospective investments.

75. At all times relevant hereto, Defendant Vricella had actual and apparent authority from Defendants TIC, PCG, Hedge Fund, NSIG, NSAM, Ianieri, Pham, Wolfe, and Faiola to act as their agent with respect to any and all matters related to Plaintiff's investments and prospective investments, and with respect to the Hedge Fund.

76. Without limitation of the previous two paragraphs, Defendant Vricella was and is an agent of TIC, with actual and apparent authority to sell securities, manage investment accounts and provide investment advisory services on TIC's behalf.

77. Defendant Faiola was and is a principal officer or member of Defendant PCG.

78. Defendant Faiola was, at all relevant times, an investment advisor to Plaintiff.

79. Defendant Faiola is licensed as a registered representative of Defendant TIC with the NASD and in Pennsylvania and New Jersey.

80. Defendant Faiola is licensed to provide investment advisory services with the SEC and in Pennsylvania and New Jersey.

81. At all times relevant hereto, Defendants Vricella and Faiola had actual and apparent authority from Defendants TIC, PCG, Hedge Fund, NSIG, NSAM, Ianieri, Pham, Wolfe, and Vricella to act as their agent with respect to any and all matters related to Plaintiff's investments and prospective investments, and with respect to the Hedge Fund.

82. Without limitation of the previous paragraph, Defendants Vricella and Faiola were and are agents of TIC, with actual and apparent authority to sell securities, manage investment accounts and provide investment advisory services on TIC's behalf. The foregoing is evidenced, *inter alia*, by TIC's letterhead and promotional and other literature disseminated by TIC expressly corroborating the broad and comprehensive authority provided to TIC's brokers and advisors, of which the following are examples:

> **We offer a truly independent experience; our advisors are not tied to proprietary products, but are free to choose from the best products available throughout the securities and insurance fields. We encourage you to structure your practice the way you see fit; our compliance personnel are always available to help you navigate through the tricky legal environment in which we all operate.**

(See TIC's promotional material from June, 2005 *Financial Advisor* magazine, at page 147, attached as Exhibit 4.)

> **When you work with an account executive of The Investment Center, you're working with someone who has met the highest standards of**

**professionalism and commitment to client service. Because we do not offer our own proprietary products, your account executive is always free to recommend the products he or she determines to best suit your financial needs.**

(See excerpt from TIC's website material attached as Exhibit 5.)

**All securities offered through the Investment Center, Inc., Bridgewater, NJ - Member NASD/SIPC/MSRB**

(See, e.g., PCG/TIC Summary Account Statements ("TIC Summary Statements") attached hereto collectively as Exhibit 6.)

### Factual Allegations Applicable to All Counts

83.   On or about November 10, 2000, Defendants Vricella and Faiola began to manage the investment account of Ross Findlay, Plaintiff Kimberly Findlay's husband.  Said account was maintained by Defendant TIC.

84.   On or about February 28, 2001, Plaintiff Kimberly Findlay established an investment account with Defendant TIC (see New Client Record attached hereto as Exhibit 7).  Faiola was TIC's account executive for said account under the direct supervision and control of TIC and Vricella.

85.   At the time of her creation of an account with TIC, Plaintiff believed that all monies that she invested would be supervised according to strict guidelines established by the SEC, NASD, TIC, Vricella and by other regulatory agencies.

86.   At the time of Plaintiff's first investment with TIC, TIC performed an investment profile evaluation for her.  That profile identified Plaintiff as a homemaker with two dependents and concluded that Plaintiff had no investment experience in equities, bonds, options or futures and that her investment objectives were growth and income (see Exhibit 7).

87.   One of Plaintiff's investment objectives was to manage securities given to her by her parents in a fashion that would provide income to her elderly, retired parents on a continuing basis.  Plaintiff clearly communicated that objective to Defendants Faiola and Vricella, and through them, to Defendants TIC and PCG.

88.   At the time Plaintiff became a client of TIC, PCG, Vricella and Faiola, Plaintiff's father was incapacitated and resided in a nursing home, and Plaintiff's mother's health had been declining.  The foregoing had been communicated to Defendants Faiola and Vricella, and through them, to Defendants TIC and PCG.

89.   As of January 8, 2002, a summary of Ross and Kimberly Findlay's investments showed holdings valued at $1,920,578.39, more than 89% of which belonged to Plaintiff Kimberly Findlay.

90.   On or around July 15, 2003, Defendant Faiola induced Plaintiff to liquidate a safe, conservative income producing investment in 36,900 shares of Cincinnati Financial Corp. ("Cincinnati Shares") (see Exhibit 8), which she had received from her parents, and to initially invest the proceeds in a mutual fund of SEI Trust Co. ("SEI").

91.   The liquidation of the Cincinnati Shares resulted in (i) Plaintiff's investment having been converted from a safe, income producing investment to a relatively risky investment; (ii) the imposition of approximately $210,000.00 in federal income tax to Plaintiff, and (iii) the imposition of significant fees and commissions payable by Plaintiff to TIC of at least $12,477.00.  Plaintiff was not informed in advance of said consequences.

92.   When Plaintiff learned about the fees and commissions for the liquidation of the Cincinnati Financial Securities, Defendant Vricella advised Plaintiff that she was lucky that Vricella had a friend working on the stock trading floor who worked the cost down from $50,000.

93.   As of December 31, 2003, Ross and Kimberly Findlay's investments were valued by TIC at $2,036,222.88 (see Exhibit 6), which included an initial unsuitable investment of $100,000.00 ("First Hedge Fund Investment") by Plaintiff Kimberly Findlay into the Hedge Fund (see Transaction Confirmation evidencing the First Hedge Fund Investment attached hereto as Exhibit 9).

94.   The First Hedge Fund Investment was solicited by means of the Private Offering Memorandum, a copy of which is attached hereto as Exhibit 3.

95.   Subsequently, Plaintiff learned about and was provided with another version of the Private Offering Memorandum which, on its cover page (attached hereto as Exhibit 10), represented that the minimum investment in the Hedge Fund was $50,000.00.  When Plaintiff was induced to subscribe to an investment in the Hedge Fund, she was provided with the Private Offering Memorandum which, on the cover page, reflected an increased minimum investment of $100,000.00.

96.   The Private Offering Memorandum was prepared by persons unknown to Plaintiff, the identity of whom will be established during discovery.  On information and belief, the form for the Private Offering Memorandum was provided to Defendants Vricella and Faiola by Defendant Ianieri to facilitate the marketing of a partnership in whose operation Defendant Ianieri held a substantial financial interest.

97.   The Private Offering Memorandum made representations on behalf of Defendants TIC, NSIG, NSAM, Ianieri, Pham, Wolfe, Faiola and Vricella.

98.   The Private Offering Memorandum for the Hedge Fund falsely and materially represented that there would be annual audits of the Hedge Fund's finances by certified public accountants.  No such audits were ever performed, and none were ever contemplated, thus making said representation knowingly false when made.

99.   Defendant Faiola expressly represented to Plaintiff that the Hedge Fund was a good deal, that it was reserved for special high net worth clients, and that it would not be shared with everyone.

100.  In reliance upon Faiola's representations, Plaintiff made the first Hedge Fund Investment in December, 2003 and executed the signature page of the Hedge Fund's Subscription Agreement, a copy of which is attached hereto and incorporated herein by reference as Exhibit 11.

101.  The limited partnership interests in the Hedge Fund purchased by Plaintiff in 2003 for $100,000.00 were "securities" within the meaning of federal law and the laws of Pennsylvania and New Jersey.

102.  On information and belief, and based upon representations made by Defendant Vricella, Defendants Vricella, Faiola, PCG and/or TIC received a commission of 2% of the purchase price paid by Plaintiff for the Hedge Fund's limited partnership interests.

103.  Also in December, 2003, Faiola persuaded Plaintiff to invest the proceeds of the sale of Cincinnati Shares in certain mutual funds managed by SEI.  Defendants Faiola, Vricella, PCG, and TIC earned substantial fees from that sale and purchase by Plaintiff.

104.  The SEI mutual funds and Plaintiff's First Hedge Fund Investment were combined on the TIC Summary Statements issued and provided to Plaintiff by Defendants Faiola, Vricella, TIC and PCG (see Exhibit 6).

105.  Plaintiff reasonably believed, based upon the structure of the TIC Summary Statements and the absence of any suggestion to the contrary by Faiola and Vricella, that all of her investments remained with TIC and were offered through, managed, monitored and supervised by TIC.

106.  The TIC Summary Statements from Defendants PCG and TIC from December, 2003 through late 2005 included Plaintiff's interests as a security holder and limited partner in the

Hedge Fund and contained the prominent notation, 'All securities offered through the Investment Center, Inc., Bridgewater, N.J.  Member NASD/SIPC/MSRB' (see Exhibit 6).

107.  Plaintiff reasonably believed that all of her investments in the Hedge Fund were being purchased from and through TIC as supervising broker/dealer and investment advisor.

108.  Plaintiff was advised by Faiola that at the end of 2004 and beginning of 2005 the Hedge Fund went from a loss to a gain.

109.  On April 16, 2005, Plaintiff had a meeting ("April 16th Meeting") with Defendant Faiola at Plaintiff's home in Chalfont, Pennsylvania.  At that meeting, Faiola represented to Plaintiff that there had been additional losses in the Hedge Fund, but that things were going well.

110.  During the April 16th Meeting, Faiola represented to Plaintiff that, as a result of the additional losses described above, Ross and Kimberly Findlay's investment portfolio had fallen below $2,000,000.00 (approximately 90% of which was then owned by Plaintiff Kimberly Findlay).

111.  During the April 16th Meeting, Faiola represented to Ross Findlay and Plaintiff Kimberly Findlay that he would like to see their portfolio back up at the $2,000,000.00 mark.

112.  During the April 16th Meeting, Faiola urged Plaintiff to increase her investment in the Hedge Fund, advising her that such an investment would be a wonderful means to get the family's accounts back up to the $2 million mark, and that a substantial investment in the Hedge Fund was the best way to accomplish that objective.

113.  During the April 16th Meeting, Faiola further advised Plaintiff that if she kept her investments principally in SEI that she would not see such an increase.

114.  During the April 16th Meeting, Faiola represented to Plaintiff that taking her funds from SEI and putting them into the Hedge Fund, to bring the Hedge Fund account to $1 million, would be the ideal way to go.

115.  Faiola continually represented to Plaintiff during the April 16th Meeting that transferring $900,000.00 from SEI accounts to the Hedge Fund was the only way to bring Plaintiff's numbers back up.

116.  During the April 16th Meeting, Faiola advised Plaintiff that everyone in the Hedge Fund (all partners) were increasing their investments by the same dollar values.

117.  During the April 16th Meeting, Plaintiff asked for reassurances from Faiola that she would not be making the investment alone and that other partners were making similar

contributions. Faiola assured Plaintiff that all the partners were increasing their investments in the Hedge Fund.

118. In reliance upon Faiola's representations, advice and assurances described in paragraphs 108 through 117 above, Plaintiff invested $900,000.00 in the Hedge Fund on or around April 26, 2005 (the "Second Hedge Fund Investment"). Copies of NSIG Quarterly Statements (the "NSIG Statements") reflecting the Second Hedge Fund Investment and the subsequent performance of the Hedge Fund are attached hereto collectively as Exhibit 12.

119. The proceeds for the Second Hedge Fund Investment were generated by ICAS' liquidation of Plaintiff's securities then invested in various mutual funds maintained at and under the direct supervision, management and control of ICAS.

120. No written disclosures were provided to Plaintiff in connection with the Second Hedge Fund Investment, including, without limitation, a prospectus, private offering memorandum, subscription agreement or rescission right disclosure document.

121. No Defendant disclosed to Plaintiff, in connection with Plaintiff's purchase of the Second Hedge Fund Investment, that she had an unconditional right, under Pennsylvania law, to rescind said purchase within two business days.

122. The Second Hedge Fund Investment was a purchase and sale of new unregistered securities in the Hedge Fund.

123. Despite the requirement under federal and state law of full disclosure of all material facts in connection with any purchase and sale of securities, Defendants failed to issue written disclosures in connection with Plaintiff's Second Hedge Fund Investment in April, 2005, and failed to advise Plaintiff of all material facts in connection with said purchase.

124. The Private Offering Memorandum issued in 2003 was grossly inadequate to describe all material facts concerning the Hedge Fund and the Second Hedge Fund Investment in 2005.

125. Reasonably relying upon Faiola's representations, advice and assurances, as set forth herein, Plaintiff made the Second Hedge Fund Investment and acquired new limited partnership interests in the Hedge Fund such that the First Hedge Fund Investment and Second Hedge Fund Investment totaled $1,000,000.00 (the First and Second Hedge Fund Investments are collectively referred to hereafter as the "Hedge Fund Investments").

126. After her purchase of the Second Hedge Fund Investment in April, 2005, on information and belief, and as evidenced by the Hedge Fund's IRS Form K-1 attached hereto and incorporated

herein by reference as Exhibit 13, Plaintiff held at least a two-thirds interest in all of the assets of the Hedge Fund, and the interests of the Hedge Fund and Plaintiff became essentially the same.

127. Had Plaintiff known that her purchase of the Second Hedge Fund Investment in April 2005 would result in her beneficially owning a disproportionate percentage of the Hedge Fund's assets, she would not have purchased the Second Hedge Fund Investment, and she would not have continued as a limited partner in the Hedge Fund.

128. The Hedge Fund was an unregistered mutual fund investing in highly speculative options and other securities, and was grossly unsuitable to Plaintiff's investment objectives and risk tolerance.

129. A TIC Summary Statement and an NSIG Statement both dated as of May 16, 2005 (the "May 16th Statements") showed a purported total value for Plaintiff's Hedge Fund Investments of $935,246.32 (see Exhibits 6 and 12).

130. When the May 16th Statements were issued, Defendants TIC, PCG, Vricella, Faiola, NSAM, NSIG, Ianieri, Pham and Wolfe were all aware or should have been aware that the actual value of Plaintiff's Hedge Fund Investment was not greater than $352,824.77 (see NSIG Statement dated as of July 10, 2005 (the "July 10th NSIG Statement") included in Exhibit 12).

131. The May 16th Statements failed to disclose that immediately after Plaintiff's Second Hedge Fund Investment in April, 2005, Defendants Hedge Fund, TIC, Vricella, Faiola, PCG, NSIG, NSAM, Ianieri, Pham and Wolfe took Plaintiff's Second Hedge Fund Investment and promptly lost $567,322.11 (63%) of it, by investing in risky options for eBay stock, which options promptly expired worthless.

132. Notwithstanding that Plaintiff's Second Hedge Fund Investment was gone within a few days, or at most one or two weeks after it was made, none of said Defendants disclosed that fact to her.

133. Incredibly, the Defendants charged Plaintiff's account a fee of $17,991.00, on top of her loss of principal, for the "service" of having recklessly invested her money on her behalf (see the July 10th NSIG Statement included in Exhibit 12).

134. The false and fraudulent May 16th Statements were intended to cause, and did cause, Plaintiff not to demand the funds in her capital account in the Hedge Fund and not to sell all of the securities in her accounts with TIC and PCG.

135. The TIC May 16th Account Statement disclosed under the category "Joint Accounts" an investment advisory account maintained and managed by Defendants TIC, PCG, Vricella and Faiola titled "S. Kimberley Findlay UGMA David" in the then amount of $161,561.20 (the "UGMA Account").

136. The UGMA Account had originally been established by Kimberly's parents for Kimberly's son, David Kasinkas. It was transferred to her custodianship in September of 2001 and has been maintained and managed by Defendants TIC, PCG, Vricella and Faiola since September of 2001 (see Exhibit 14).

137. Between May 16, 2005 and August 24, 2005, Defendants TIC, PCG, Vricella and Faiola fraudulently induced Kimberly to transfer the UGMA Account to Kimberly's account then being managed by Defendants TIC, PCG, Vricella and Faiola.

138. Defendants TIC, PCG, Vricella and Faiola then proceeded to fraudulently invest the UGMA Account proceeds and, on information and belief, commingle same with proceeds used for the Second Hedge Fund Investment and/or other unsuitable investments.

139. On or around May 16, 2005, Plaintiff began to ask TIC, through Faiola, for monthly statements and transaction summaries. Plaintiff's request was reiterated in late July, 2005, when Ross Finlay was invited to go fishing with Defendants Vricella and Faiola on Vricella's boat named "The Crime Scene". No such statements were received before November, 2005.

140. Between July 1, 2005 and September 30, 2005, Defendants Hedge Fund, TIC, Faiola, Vricella, PCG, NSIG, NSAM, Ianieri, Pham and Wolfe lost another $238,987.07 of Plaintiff's already-diminished account in the Hedge Fund (see NSIG Statement dated November 1, 2005 (the "November 1st NSIG Statement") included in Exhibit 12). On information and belief, they did so by recklessly placing incredibly risky "bets" on various options, all of which were purchased in the hopes of covering up earlier losses.

141. At the beginning of August, 2005, Ross Findlay called Defendant Faiola to ask for information. During that conversation, Faiola represented to Ross that a 28% loss had occurred in the Hedge Fund (a misrepresentation which substantially understated actual losses to that point). Ross told Faiola that Defendant Vricella should call Plaintiff Kimberly Findlay to discuss her account.

142. Within a day of the August 2005 conversation between Ross Findlay and Faiola, Vricella called Plaintiff. He told her at that time that he had wanted to wait to call with better news but that the news was not getting better. Vricella admitted to Plaintiff that he should have called her sooner, but that the losses had snowballed and he just kept not wanting to call.

143. A TIC Summary Statement dated August 24, 2005 (the "August 24th Summary Statement") (see Exhibit 6), showed that Ross and Kimberly Findlay's total account value was down to $1,505,949.95, and that Plaintiff's investment in the Hedge Fund was down to $668,265.91.

144. When the August 24th Summary Statement was issued, Defendants TIC, PCG, Vricella, Faiola, NSAM, NSIG, Ianieri, Pham and Wolfe were all aware or should have been aware that the actual value of Plaintiff's investment in the Hedge Fund was not greater than $352,824.77, and probably already closer to $113,837.70 (its value as of September 30, 2005) (see the July 10th and November 1st NSIG Statements included in Exhibit 12).

145. The false and fraudulent August 24th Summary Statement was intended to cause, and did cause, Plaintiff to not demand the funds in her capital account in the Hedge Fund and to not sell all of the securities in her accounts with TIC and PCG.

146. Upon examining the August 24th Summary Statement, Plaintiff instructed Defendant Faiola that he should notify her immediately if the value of her investment in the Hedge Fund fell to $600,000.00, and that, in light of the staggering losses thus far, the "drop dead" amount that she needed to be able to withdraw from the Hedge Fund was to be $500,000.00. During a meeting at Plaintiff's home in Chalfont, Pennsylvania, on or about August 24, 2005 (the "August 24th Meeting"), Faiola expressly agreed to those conditions.

147. After the August 24th Meeting, Defendant Faiola left Plaintiff's home with a firm, unconditional directive to notify Plaintiff of any further losses, and to not permit the value of Plaintiff's investment in the Hedge Fund to fall below $500,000.00.

148. After a complete loss of all of Plaintiff's Hedge Fund Investments, Defendant Vricella advised Plaintiff on or about October 20, 2005, for the first time, that there could never be a "drop dead" figure and that Defendant Faiola was wrong to state that there could be.

149. Defendants Vricella and Faiola never advised Plaintiff of her right to withdraw the balance of her capital account.

150. Defendant Vricella admitted to Plaintiff that he bore full responsibility for not overseeing Defendant Faiola as an agent of TIC and PCG and as a "general partner" of the Hedge Fund.

151. Through an NSIG Statement dated as of January 20, 2006, Defendant NSIG notified Plaintiff in writing that her Hedge Fund Investments had become worthless (see Exhibit 12).

152. At that point, Plaintiff's net loss on her Hedge Fund Investments was $1,000,000.00.

153.  Upon information and belief, at all times relevant hereto, Defendants Vricella, Faiola, Ianieri, Pham and Wolfe exercised direct influence and/or control over the Hedge Fund and over Defendants NSIG and NSAM.

154.  Defendants conducted business in the Commonwealth of Pennsylvania by soliciting investments from residents of Pennsylvania, including investments by Plaintiff described herein.

155.  Plaintiff is and at all times relevant was an unsophisticated investor with only a negligible understanding of securities investments and absolutely no understanding of hedge fund investments.

156.  Defendants Vricella and Faiola engaged in an egregious scheme to defraud Plaintiff, in part by pretending to be sophisticated financial advisors and registered representatives whose advice was necessary to the effective investment of her personal funds.

157.  Defendants Vricella and Faiola delivered a Private Offering Memorandum to Plaintiff in late 2003 which purported to explain the investment strategy of the Hedge Fund in which Plaintiff was encouraged to invest.

158.  Knowing that Plaintiff was unsophisticated, and wanting to appear to her to be sophisticated themselves, Defendants Vricella and Faiola, as a calculated sales strategy, relied upon incomprehensible gibberish to induce Plaintiff to believe, first, that Vricella and Faiola were far more sophisticated in investment matters than she; second, that she would need their help in placing her funds; and, third, that the Hedge Fund's investment strategy was highly sophisticated, and therefore likely effective.

159.  Examples of such gibberish, all of which was meaningless, virtually meaningless, or expressed simple concepts in unnecessarily complicated ways, included:

   a.  that the Hedge Fund "will be using derivatives such as options . . . to capture the discrepancies of reactionary/initiating price movements or non-movements in implied volatility through a number of options trading strategies."

   b.  that the "Partnership's [i.e., the Hedge Fund's] proprietary software monitors the universe of optional stocks and optional sector holders in real time and scans trades through proprietary multidimensional filters and algorithms."

   c.  that "sensitivity to factors such as price, volume, time, implied and historical volatility as well as the position's exposure, will be analyzed and monitored."

18

    d.    that "[b]y using defined risk parameters, the Partnership will attempt to determine time and price forecasts for maintaining or changing the nature of the positions."

160. Defendants hid from Plaintiff the fact that their principal investment strategy was to begin with risky investments, and, as losses mounted, to place increasingly risky bets on increasingly risky options.

161. The software in question was not proprietary to the Hedge Fund, and, on information and belief, was and is sold publicly on the internet by Defendant Ianieri through his company, "Options University."

162. Defendants TIC, Vricella, Faiola, PCG, NSIG, NSAM, Ianieri, Pham and Wolfe fraudulently induced Plaintiff to place her trust and confidence in said Defendants with respect to the investment of Plaintiff's funds.

163. Defendants TIC, Vricella, Faiola, PCG, NSIG, NSAM, Ianieri, Pham and Wolfe induced Plaintiff to place her trust and confidence in said Defendants with respect to the management of Plaintiff's investment funds, by portraying themselves to Plaintiff as highly knowledgeable, successful and qualified investment professionals with the full support, resources and backing of TIC.

164. In reliance upon said Defendants' advice and recommendations, Plaintiff purchased the Hedge Fund Investments.

165. Through Vricella and Faiola, Plaintiff repeatedly expressed to Defendants TIC, PCG, NSIG, NSAM, Ianieri, Pham, Wolfe, Vricella and Faiola that her investment objectives were to preserve capital and generate income for Plaintiff and Plaintiff's retired elderly parents and to invest consistent with Plaintiff's risk tolerance.

166. All Defendants, directly or through authorized agents, made various misrepresentations to Plaintiff in order to induce Plaintiff to make the Hedge Fund Investments and to continue allowing said Defendants to provide investment advisory and brokerage services to her and to handle her accounts.  Those misrepresentations included, without limitation, the following:

    a.    That the minimum investment in the Hedge Fund was $100,000.00 when another version of the Hedge Fund's Private Offering Memorandum provided for a minimum investment of $50,000.00;

    b.    That the Investment Manager [NSAM] tended to employ an opportunistic strategy that will allow optimal performance;

c.   That the Partnership [i.e., the Hedge Fund] intended to achieve high rates of return with a minimum draw down by investing and trading securities based on the Hedge Fund's proprietary trading program;

d.   That with the assistance of computer technology calculating proprietary algorithms, the Partnership would monitor highly significant order flow in equities;

e.   That the Partnership's proprietary software monitors the universe of optional stocks and optional sector holders in real time and scans trades through proprietary multidimensional filters and algorithms;

f.   That sensitivity to factors such as price, volume, time, implied and historical volatility as well as the position's exposure, would be analyzed and monitored;

g.   That the Partnership would be using options to manage risk;

h.   That beginning 365 days from the date a limited partner is admitted into the partnership, such limited partner would have the right to withdraw, in whole or in part, his closing capital account at the end of each calendar quarter;

i.   That the Hedge Fund would send to all partners, including Plaintiff, after the end of each calendar year, financial statements audited by the Hedge Fund's independent accountants;

j.   That the basic core investment strategy for the Hedge Fund would be the "buy-write" strategy whereby the Investment Manager [NSAM] would sell covered calls against stock owned by the Hedge Fund;

k.   That the trading ideas that served as the catalysts for entry into positions would almost exclusively be derived from proprietary software applications;

l.   That the Hedge Fund would be using derivatives such as options to capture the discrepancies of reactionary/initiating price movements or non-movements in implied volatility through a number of options trading strategies;

m.   That by using defined risk parameters, the Hedge Fund would attempt to determine time and price forecasts for maintaining or changing the nature of the positions;

n.     That the Hedge Fund provides investors with numerous services designed to alleviate the administrative details involved in engaging directly in securities transactions, including maintenance of the books and accounts of trading activities, which activities are summarized and reported in annual audited financial statements furnished to Plaintiff and other limited partners;

o.     That Robert Montgomery, Esquire, was general counsel to the Hedge Fund;

p.     That Baratz and Associates were certified public accountants for the Hedge Fund and would conduct annual audits of its finances.

167. Had Plaintiff been advised by any of the Defendants at any time that some or all of the representations described in the previous paragraph were not true, Plaintiff would never have invested in the Hedge Fund.

168. Said fraudulent misrepresentations were material and highly misleading and/or false, and designed solely to induce Plaintiff to continue to provide Defendants with her funds that Defendants could then convert to their own uses.

169. Starting in late 2005, Plaintiff learned the following facts, all of which had been concealed from her by all Defendants:

a.     That after December, 2004 (365 days after her First Hedge Fund Investment) she would not be permitted to withdraw (or even to know) her true capital account balance at the end of each quarter;

b.     That Baratz and Associates were not certified public accountants for the Hedge Fund;

c.     That no annual audits of the Hedge Fund's finances would be conducted;

d.     That no certified public accountant had been retained to perform audits of the Hedge Fund's finances;

e.     That Robert Montgomery, Esquire was not general counsel to the Hedge Fund;

f.     That there was no general counsel to the Hedge Fund;

g.     That purchase of the Hedge Fund Investments involved not merely a remote risk, but a substantial risk, of a loss of Plaintiff's entire investment;

h. That the Hedge Fund's assets were invested solely in extremely risky options and other derivatives, with few or no offsetting positions or true hedging of risk; and

i. That Defendants PCG, NSIG, NSAM, Ianieri, Pham, Wolfe, Vricella and Faiola were treating the Hedge Fund's assets (and the Plaintiff's money) as their own stake in what was, in essence, a highly organized and blatantly unlawful gambling venture.

170. Had Plaintiff been advised by any of the Defendants at any time of the omitted facts described in the previous paragraph, Plaintiff would never have entrusted any of the Defendants with her funds to invest, or given any of the Defendants access to any of her brokerage accounts.

171. Defendants TIC, Vricella, Faiola, PCG, NSIG, NSAM, Ianieri, Pham and Wolfe converted and/or misappropriated, or caused to be converted and/or misappropriated, all of Plaintiff's investment in the Hedge Fund for their own purposes and failed to return said funds to Plaintiff.

172. At the time Plaintiff commenced investing with Defendants, Plaintiff placed her utmost trust and confidence in said Defendants, resulting in said Defendants exercising undue influence over Plaintiff and Plaintiff's investments.

173. At the time she made the Second Hedge Fund Investment in April, 2005 and thereafter, Plaintiff was never notified by any of the Defendants of her right under Pennsylvania law to rescind the Second Hedge Fund Investment within two business days.

174. As a result of the unlawful misconduct of Defendants, Plaintiff has lost the $1,000,000.00 she invested in the Hedge Fund.

175. All Defendants knew or should have known that Defendants Faiola and Vricella were engaging in egregiously illegal misconduct in connection with the purchase and sale of securities and said Defendants failed to conduct regular reviews and/or audits of the activities of Defendants Faiola and Vricella and/or failed to make regular contact with Plaintiff.

176. The NASD promulgates Rules and Notices to Members that govern the conduct of registered broker-dealers and investment advisors. Said rules establish standards of conduct and professional standards of due care for NASD members.

177. On information and belief, all Defendants are NASD members or controlled by NASD members.

178. NASD Rule 2310 provides in pertinent part as follows:

22

2310. Recommendations to Customers (Suitability)

(a) In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs.

(b) Prior to the execution of a transaction recommended to a non-institutional customer, other than transactions with customers where investments are limited to money market mutual funds, a member shall make reasonable efforts to obtain information concerning:

> (1) the customer's financial status;

> (2) the customer's tax status;

> (3) the customer's investment objectives; and

> (4) such other information used or considered to be reasonable by such member or registered representative in making recommendations to the customer.

179. NASD Notice to Members 03-07, attached hereto in its entirety as Exhibit 15, provides in pertinent part as follows:

> NASD's review of members revealed that some firms rely heavily on an investor's status as an accredited investor under Regulation D of the '33 Act as the single criterion for satisfying their suitability obligations in connection with the sale of hedge funds. A customer's specific level of assets does not, by itself, satisfy a member's obligations under the suitability rule [footnote omitted]. Members and their associated persons must examine the factors listed in NASD Rule 2310 prior to making any recommendation . . . A member's internal controls, including supervision and compliance, must ensure that sales of hedge funds . . . comply with all relevant NASD and SEC rules. Members must include written procedures for supervisory personnel to review compliance with NASD and SEC rules, the accuracy of information gathered, and the appropriateness of the suitability determinations made by their associated persons. Beyond establishing written supervisory procedures, members also must be able to demonstrate adherence to such procedures.

180. Defendants Faiola and Vricella knew that Plaintiff had been designated an "accredited investor" solely by virtue of her net worth, which in turn was a result of a gift from her parents, and that she was, in fact, an unsophisticated investor with negligible understanding about securities investments. Faiola's and Vricella's knowledge is imputed to other Defendants for whom they were acting with actual or apparent authority.

181. During the period that TIC managed Plaintiff's accounts, Defendants TIC, Vricella and Faiola, in addition to the Hedge Fund Investments, invested Plaintiff's funds in other unsuitable securities including, without limitation, "B" share mutual funds and other mutual funds inconsistent with her investment objectives and risk tolerance.

## COUNT I
## SECTION 10b OF THE SECURITIES AND EXCHANGE ACT OF 1934

### Plaintiff vs. All Defendants

182. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 181.

183. Limited partnership interests in the Hedge Fund, i.e., the Hedge Fund Investments, were securities, and the sale thereof is subject to the provisions of the Securities Act of 1933, 15 U.S.C. § 77a, et seq. (the "1933 Act") and the Securities and Exchange Act of 1934, 15 U.S.C. § 78a, et seq. (the "1934 Act"), and regulations promulgated thereunder by the SEC, including, without limitation, S.E.C. Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5").

184. Defendants TIC, Vricella, Faiola, Hedge Fund, PCG, NSIG, NSAM, Ianieri, Pham and Wolfe, individually and in concert, directly and indirectly, by using the means and instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to misrepresent facts and to conceal adverse material information about the Hedge Fund Investments made by Plaintiff as well as other securities transactions.

185. Using the mail and other instrumentalities of interstate commerce, said Defendants employed devices, schemes, and artifices to defraud; made untrue statements of material fact; omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and engaged in acts, practices, and a course of business which operated as a fraud or deceit upon Plaintiff, in connection with the purchase or sale of securities, in violation of Section 10b of the 1934 Act and Rule 10b-5.

186. Said Defendants had actual knowledge of, or acted with severe reckless disregard with respect to, the misrepresentations and omissions of material facts set forth herein. Such Defendants' material misrepresentations or omissions were done knowingly and for the purpose and effect of having Plaintiff purchase a grossly unsuitable, unregistered mutual fund investment and other securities products and services instead of suitable products and services.

187. Said Defendants, directly and through agents, violated the 1934 Act and Rule 10b-5, *inter alia*, by fraudulently inducing Plaintiff to purchase the Hedge Fund Investments and other

securities products and services and fraudulently misrepresenting their suitability for Plaintiff, for the sole purpose of generating higher fees, profits and commissions for said Defendants.

188. Said Defendants' misrepresentations and omissions related directly to the material facts that caused the Plaintiff's losses, *inter alia*, facts relating to the suitability of the Hedge Fund Investments and other securities.

189. Defendants ICF, DeVito, and Wright are liable to Plaintiff under Section 10b and Rule 10b-5 by virtue of their status as controlling persons of TIC under Section 20(a) of the 1934 Act, 15 U.S.C. § 78t.

190. Plaintiff acquired the Hedge Fund Investments at issue here, and maintained her investment through 2005, without knowing of the material misrepresentations and omissions of material facts by the Defendants.

191. At the time of said material misrepresentations and omissions, Plaintiff was ignorant of their falsity, believed them to be true, and believed that the Hedge Fund Investments and other securities products and services which Plaintiff was persuaded to purchase would be safe, reasonably priced, and consistent with her investment objectives and risk tolerance. Had Plaintiff known the truth, which was not disclosed by said Defendants, Plaintiff would not have purchased the Hedge Fund Investments and other securities at issue.

192. Defendants TIC, PCG, Vricella and Faiola induced a sale and purchase of securities by Plaintiff by causing her unnecessarily to liquidate her shares of Cincinnati Financial and to purchase shares in the SEI Trust Fund, generating significant fees and commissions to Defendants TIC, Vricella, Faiola and PCG. In so doing, Defendants TIC, Vricella, Faiola and PCG placed their own interests in fees and commissions before their client's interests.

193. Said conduct by Defendants TIC, PCG, Vricella and Faiola constituted "churning" of Plaintiff's account, and said Defendants failed adequately to disclose the lack of need for such a transaction, and its consequences, to Plaintiff.

194. Plaintiff, despite reasonable diligence and inquiry, did not discover said violations by Defendants TIC, PCG, Vricella and Faiola until a point less than two years before the filing of this action.

195. The additional taxes and fees paid by Plaintiff as a result of that liquidation, which additional taxes and fees exceeded $222,477.00 are losses and damages directly attributable to said violation by Defendants TIC, PCG, Vricella and Faiola.

WHEREFORE, Plaintiff demands judgment against all Defendants for damages, costs of suit, and such other relief as the Court may deem just.

## COUNT II
### SECTION 20(a) OF THE SECURITIES AND EXCHANGE ACT OF 1934
### Plaintiff vs. Defendants TIC, NSIG, Vricella, Faiola, ICF, DeVito, Wright, Ianieri, Pham and Wolfe

196. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 195.

197. All Defendants other than Defendants ICAS, NSAM and PCG are jointly and severally liable to Plaintiff in their respective capacities as a controlling person of one or more other culpable Defendants, under Section 20(a) of the 1934 Act, 15 U.S.C. § 78t.

198. For purposes of liability under said Section 20(a) of the 1934 Act:

  a.   Defendants ICF, DeVito and Wright controlled Defendants TIC and ICAS.

  b.   Defendant TIC controlled Defendants Vricella and Faiola.

  c.   Defendants Ianieri, Pham, Wolfe, Vricella and Faiola controlled Defendants Hedge Fund, NSIG and NSAM.

  d.   Defendant NSIG controlled Defendant Hedge Fund.

  e.   Although Defendants Vricella and Faiola acted as agents of Defendant PCG for various purposes relevant to this action, on information and belief Vricella and Faiola controlled PCG, and not vice-versa.

  f.   Defendant Vricella controlled Defendant Faiola.

WHEREFORE, Plaintiff demands judgment against all Defendants other than NSIG, NSAM and PCG for damages, costs of suit, and such other relief as the Court may deem just.

## COUNT III
### SECTIONS 12(a)1 AND 12(a)2 OF THE SECURITIES ACT OF 1933

### Plaintiff v. All Defendants

199. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 198.

200. The Hedge Fund Investments were sold to Plaintiff by means of written and oral untrue statements of material fact and failures to state material facts necessary in order to make other statements, in light of the circumstances under which they were made, not misleading.

201. The Plaintiff was not aware of such untruths and omissions.

202. The written materials delivered to Plaintiff by Defendants TIC, PCG, Hedge Fund, NSIG, NSAM, Ianieri, Pham, Wolfe, Vricella and Faiola did not contradict or cure the numerous material misrepresentations and omissions made by Defendants Faiola and Vricella, and, in fact, such written materials were themselves materially misleading and incomplete as alleged herein.

203. All Defendants violated Sections 12(a)1 and 12(a)2 of the federal Securities Act of 1933 (the "1933 Act"), 15 U.S.C. § 77l, by offering and selling securities to Plaintiff through the use of the mails and other instrumentalities of commerce by means of prospectuses and oral statements that included untrue statements of material fact and omitted to state material facts necessary in order to make other statements, in light of the circumstances under which they were made, not misleading.

204. Defendants ICF, DeVito, and Wright are liable to Plaintiff under Section 12 of the 1933 Act by virtue of their status as controlling persons of TIC and ICAS under Section 15 of the 1933 Act, 15 U.S.C. § 77o.

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, for damages, costs of suit and such other relief as the Court may deem just.

### COUNT IV
### SECTION 5(a) OF THE SECURITIES ACT OF 1933

**Plaintiff vs. Defendants TIC, Vricella, Faiola, Hedge Fund, ICF, DeVito,
Wright, PCG, NSIG, NSAM, Ianieri, Pham and Wolfe**

205. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 204.

206. The Hedge Fund Investments were offered and sold to Plaintiff, directly or indirectly, by Defendants TIC, Vricella, Faiola, Hedge Fund, ICF, DeVito, Wright, PCG, NSIG, NSAM, Ianieri, Pham and Wolfe, by means and instrumentalities of interstate commerce, including the mails.

207. Hedge Fund interests were not registered for sale to Plaintiff or other members of the investing public as required by Section 5(a) of the 1933 Act, 15 U.S.C. § 77e, and no exemption from registration was complied with.

WHEREFORE, Plaintiff demands judgment against Defendants TIC, Vricella, Faiola, Hedge Fund, ICF, DeVito, Wright, PCG, NSIG, NSAM, Ianieri, Pham and Wolfe, jointly and severally, for damages, costs of suit and such other relief as the Court may deem just.

## COUNT V
## SECTION 15 OF THE SECURITIES ACT OF 1933

**Plaintiff vs. Defendants TIC, NSIG, Vricella, Faiola, ICF, DeVito, Wright, Ianieri, Pham and Wolfe**

208.  Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 207.

209.  All Defendants other than Defendants ICAS, NSAM and PCG are jointly and severally liable to Plaintiff for said violations of Sections 5 and 12 of the 1933 Act in their respective capacities as a controlling person of one or more other culpable Defendants, under Section 15 of the 1933 Act, 15 U.S.C. § 77o.

210.  For purposes of liability under said Section 15 of the 1933 Act:

   a.   Defendants ICF, DeVito and Wright controlled Defendants TIC and ICAS.

   b.   Defendant TIC controlled Defendants Vricella and Faiola.

   c.   Defendants Ianieri, Pham, Wolfe, Vricella and Faiola controlled Defendants Hedge Fund, NSIG and NSAM.

   d.   Defendant NSIG controlled Defendant Hedge Fund.

   e.   Although Defendants Vricella and Faiola acted as agents of Defendant PCG for various purposes relevant to this action, on information and belief Vricella and Faiola controlled PCG, and not vice-versa.

   f.   Defendant Vricella controlled Defendant Faiola.

WHEREFORE, Plaintiff demands judgment against Defendants TIC, NSIG, Vricella, Faiola, ICF, DeVito, Wright, Ianieri, Pham and Wolfe for damages, costs of suit, and such other relief as the Court may deem just.

## COUNT VI

### VIOLATION OF PENNSYLVANIA SECURITIES ACT,
### 70 P.S. §§ 1-201, 1-401, 1-403, 1-404 and 1-503, and
### 64 Pa. Code § 403.010
### Plaintiff vs. All Defendants

211. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 210.

212. The Hedge Fund Investments and other mutual funds sold by Defendants and purchased by Plaintiff, were "securities" within the meaning of the Pennsylvania Securities Act ("PSA").

213. Each Defendant who is a registered broker-dealer owed a fiduciary duty as such to Plaintiff (both individually and as a limited partner in the Hedge Fund) under the PSA and Pennsylvania common law.

214. Each Defendant who is an investment advisor owed a fiduciary duty as such to Plaintiff (both individually and as a limited partner in the Hedge Fund) under the PSA and Pennsylvania common law.

215. The Hedge Fund Investments were grossly unsuitable to Plaintiff's investment objectives, risk tolerance, financial situation and needs.  Said Defendants knew or should have known that the securities were grossly unsuitable for Plaintiff.

216. When Defendant Faiola recommended to Plaintiff the purchase of the Hedge Fund Investments, he did not have reasonable grounds to believe that the recommendation was suitable for Plaintiff on the basis of information furnished by Plaintiff after reasonable inquiry concerning Plaintiff's investment objectives, financial situation and needs, and other information known by or made available to Defendants, in violation of 64 Pa. Code Sec. 403.010(b).

217. Defendant Faiola, as agent for all other Defendants with actual and apparent authority to represent said Defendants, nevertheless recommended grossly unsuitable securities for the Plaintiff.

218. Defendant Faiola, as agent for all other Defendants, intentionally or recklessly made material misrepresentations, and, owing a duty to Plaintiff, failed to disclose material information regarding the suitability of said securities for Plaintiff's investment objectives, risk tolerance, financial situation and needs.

219. Plaintiff justifiably relied to her detriment on said Defendants' fraudulent conduct.

220. In connection with the offer, sale or purchase of securities in Pennsylvania, all Defendants, directly and indirectly, through one or more agents:

    a.    employed devices, schemes and artifices to defraud;

    b.    intentionally and/or recklessly made untrue statements of material fact and omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and

    c.    engaged in acts, practices and courses of business which operated or would operate as a fraud or deceit upon Plaintiff and others.

221. Defendants failed to register the Hedge Fund with the Pennsylvania Securities Commission for sale in Pennsylvania to Pennsylvania residents, and no exemption from registration was complied with.

222. Defendants violated Section 201 of the PSA, 70 P.S. § 1-201, by failing either to register the Hedge Fund or to qualify for an exemption from such registration requirements.

223. On information and belief, Defendants TIC, PCG, Hedge Fund, Vricella, Faiola, NSIG, NSAM, Ianieri, Pham and Wolfe failed to notify Plaintiff of material changes in the membership of the Hedge Fund, financial position, management, operations and other material attributions as they occurred or within a reasonable time thereafter.

224. As the direct and proximate result of the fraud and deceit of Defendants in direct contravention of Sections 201, 401, 403, 404, 405 and 503 of the PSA, Plaintiff has sustained damages for which Defendants are liable, jointly and severally, to Plaintiff under 70 P.S. §§ 1-501 and 1-503, including the loss of her investment, tax liabilities, and the loss of investment opportunities and income.

225. The conduct of Defendants in breaching the afore-described fiduciary obligations and perpetrating and carrying out their scheme to defraud Plaintiff of her funds and the conversion of those funds was outrageous, malicious, willful, wanton and in reckless disregard of the rights of Plaintiff and the investment public, and is not to be tolerated in a civilized society. Consequently, Plaintiff is entitled to recover both compensatory and punitive damages.

WHEREFORE, Plaintiff demands judgment against all Defendants pursuant to Sections 1-501 and 1-503 of the PSA, jointly and severally, for damages, costs of suit, and such other relief as the Court may deem just.

**COUNT VII**
**PENNSYLVANIA UNFAIR TRADE PRACTICES AND**
**CONSUMER PROTECTION LAW**

**Plaintiff vs. Defendants TIC, Vricella, Faiola, PCG,**
**NSIG, NSAM, Ianieri, Pham and Wolfe**

226.  Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 225.

227.  Defendants TIC, Vricella, Faiola, PCG, NSIG, NSAM, Ianieri, Pham and Wolfe provided investment advisory, brokerage and/or consulting services to Plaintiff.

228.  In providing such services, each of said Defendants engaged in fraudulent and deceptive conduct which created a likelihood of confusion or of misunderstanding, and did create confusion and misunderstanding, on the part of Plaintiff with respect to the purchase of intangible property and services, all in violation of 73 P.S. § 201-2.

229.  Each of said Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of a trade or commerce in violation of 73 P.S. §§ 201-2 and 201-3.

230.  Plaintiff purchased investment advisory, brokerage and/or financial planning services primarily for personal, family or household purposes and thereby suffered ascertainable loss of money or property as a result of the use or employment by said Defendants of methods, acts and practices declared unlawful by 73 P.S. § 201-3.

231.  Plaintiff brings this private action for treble damages under 73 P.S. § 201-9.2.

WHEREFORE, Plaintiff demands against Defendants, jointly and severally, actual damages sustained, trebled according to law, together with costs, reasonable attorneys' fees, and such additional relief as the Court deems just.

**COUNT VIII**
**BREACH OF CONFIDENTIAL RELATIONSHIP**

**Plaintiff vs. Defendants TIC, Vricella, Faiola,**
**PCG, NSIG, NSAM, Ianieri, Pham and Wolfe**

232.  Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 231.

233.  The Plaintiff's lack of expertise, experience and sophistication in securities and investment transactions and complete deference to and reliance upon the purported expertise, success and resources of the Defendants named in the heading of this Count created a confidential

relationship between Plaintiff and Defendants TIC, Vricella, Faiola, PCG, NSIG, NSAM, Ianieri, Pham and Wolfe.

234. Said Defendants breached their confidential relationship owed to Plaintiff by, *inter alia*, fraudulently inducing Plaintiff to procure their services and to acquire the unsuitable securities products referred to in this Complaint.

235. Plaintiff surrendered substantial control of her business affairs to the dominating parties, here Defendants TIC, PCG, NSIG, NSAM, Ianieri, Pham, Wolfe, Vricella and Faiola.

236. Without limitation of the foregoing paragraphs of this Count, Defendant TIC breached its confidential relationship owed to Plaintiff by failing to implement and execute policies and procedures to adequately supervise Defendants Vricella and Faiola, permitting them to engage in the unlawful activities described in this Complaint, as well as facilitating the sale of unsuitable financial planning and investment advisory services and insurance and securities products to Plaintiff.

237. As a direct and proximate result of the breach of the respective confidential relationships owed to Plaintiff by said Defendants, Plaintiff has sustained damages including the loss of her Hedge Fund Investments and the loss of other investment opportunities and income.

238. The conduct of said Defendants in breaching the afore-described confidential relationships and perpetrating and carrying out their scheme to defraud Plaintiff of her funds and the conversion of those funds was outrageous, malicious, willful, wanton and in reckless disregard of the rights of Plaintiff and the investment public.

WHEREFORE, Plaintiff demands all damages foreseeably caused by said breaches, costs of suit, reasonable attorneys fees, and such other relief as the Court may deem just.

### COUNT IX
### BREACH OF FIDUCIARY DUTY

**Plaintiff vs. Defendants TIC, Vricella, Faiola,
PCG, NSIG, NSAM, Ianieri, Pham and Wolfe**

239. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 238.

240. Defendants TIC, Vricella, Faiola, PCG, NSIG, NSAM, Ianieri, Pham and Wolfe owed a fiduciary duty to Plaintiff, individually or as a limited partner in the Hedge Fund.

241. Said fiduciary duty arose as a result, *inter alia*, of each Defendant's status as an investment advisor, broker-dealer, or officer of the general partner of a limited partnership in which Plaintiff was a limited partner.

242. Defendants, each of whom was identified by the Private Offering Memorandum and other documents as a person whose help and assistance was available to Plaintiff with respect to Plaintiff's financial planning, owed a fiduciary duty to Plaintiff to place her interests before their own in making decisions and recommendations concerning the financial planning and investment products purchased by Plaintiff.

243. All Defendants owed a fiduciary duty toward Plaintiff in connection with their conduct as broker-dealers, investment advisors, accountants or attorneys with respect to the sale of securities to Plaintiff.

244. Defendants breached said fiduciary duty.

245. Defendants TIC, PCG, Vricella and Faiola breached their fiduciary duty to Plaintiff in causing her unnecessarily to liquidate her shares of Cincinnati Financial and to purchase shares in the SEI Trust Fund.  In so doing, said Defendants placed their own interests in fees and commissions before their client's interests.

246. Plaintiff, despite reasonable diligence and inquiry, did not discover said breach by Defendants TIC, PCG, Vricella and Faiola until a point less than two years before the filing of this action.

247. The additional tax and expenses paid by Plaintiff as a result of that liquidation, which additional tax and expenses exceeded $222,477.00 is a loss and damage directly attributable to said breach by Defendants TIC, PCG, Vricella and Faiola.

WHEREFORE, Plaintiff demands restitution in the full amount of her losses caused by Defendants' breaches, costs of suit, and such other relief as the Court may deem just.

### COUNT X
### BREACH OF IMPLIED CONTRACT AND
### DUTY OF GOOD FAITH AND FAIR DEALING

### Plaintiff vs. Defendants TIC, PCG, NSAM and NSIG

248. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 247.

249.  Defendants TIC, PCG, NSAM and NSIG had an implied contract with Plaintiff that the Defendants would provide valuable and competent investment advisory, financial planning, securities brokerage and/or financial management services to or on behalf of Plaintiff in compliance with all applicable statutes, rules and regulations.  Each of said Defendants materially breached such agreement, *inter alia*, by failing to provide such services.

250.  Each of said contracts contained an implied duty of good faith and fair dealing with respect to their performance.

251.  Said Defendants breached said implied duty of good faith and fair dealing in performing said contracts.  Without limitation, said breaches included the actions of Defendants Faiola, Vricella, Ianieri, Pham, Wolfe, PCG, NSAM, and NSIG in placing their own profit and fees before the legitimate interests and contractual expectations of Plaintiff; by paying and receiving exorbitant fees, charges, and sales commissions, and by preying upon and trapping Plaintiff in unsaleable, grossly unsuitable and fraudulent investments.  Said breaches also included the actions of TIC in failing to cause its agents, Faiola and Vricella, to comply with TIC's obligations to Plaintiff.

252.  Said Defendants also materially breached said contracts by engaging in the wrongful conduct alleged in this Complaint.

WHEREFORE, Plaintiff demands all damages foreseeably caused by said breaches, together with costs of suit, and such other relief as the Court may deem just.

### COUNT XI
### FRAUD AND DECEIT

**Plaintiff vs. Defendants TIC, Hedge Fund, Vricella, Faiola, PCG,
NSIG, NSAM, Ianieri, Pham and Wolfe**

253.  Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 252.

254.  Defendants PCG, Vricella, Faiola, NSIG, NSAM, Ianieri, Pham and Wolfe were the authorized agents of each other and of Defendants TIC and Hedge Fund with both actual and apparent authority to make representations to Plaintiff as alleged herein, and were acting within the scope of said authority when they made each of the misrepresentations and omissions alleged herein.

255.  Said representations were intended to benefit, and did benefit, all of said Defendants.

256. Said Defendants, directly or through their respective agents, intentionally made untrue statements of material fact and omitted to state material facts necessary to make other statements not misleading, with the intent, knowledge and expectation that Plaintiff would rely thereon.

257. Each of said Defendants knew, at the time said promises were made, that the investment advisory, brokerage and/or financial planning and management services to be provided by TIC, Faiola and Vricella were and would be worthless, and indeed potentially harmful to Plaintiff, and that investments in the Hedge Fund were grossly unsuitable for virtually any prudent investor, let alone an unsophisticated consumer investor such as Plaintiff.   Each of said Defendants permitted said promises to be made with the purpose and intent of defrauding Plaintiff and obtaining money by extending illusory promises of valuable services and investment products in exchange for cash.

258. Plaintiff did not know, and had no reason to know, that the Hedge Fund investments and financial planning provided by Defendants were worthless and harmful, and Plaintiff relied upon said Defendants' assurance, made directly or through their respective agents, that said services were necessary and useful.

259. Plaintiff reasonably and justifiably relied upon the misstatements, omissions and misrepresentations of value described herein.

260. Plaintiff suffered pecuniary loss as a proximate result of such misstatements, misrepresentations and omissions.

WHEREFORE, Plaintiff demands all damages proximately caused by such reliance, together with punitive damages, pre- and post-judgment interest, reasonable counsel fees and costs of suit and such other relief as the Court may deem just.

**COUNT XII**
**NEGLIGENT MISREPRESENTATION**

**Plaintiff vs. All Defendants**

261. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 260.

262. All Defendants, directly and through their authorized agents, Faiola and Vricella, negligently made untrue statements of material fact, and omitted to state material facts necessary to make other statements not misleading, with the intent, knowledge and expectation that Plaintiff and others similarly situated would rely thereon.

263. By virtue of their special relationships with Plaintiff as her investment advisors, broker-dealers, partners, or officers of partners (all as more particularly alleged hereinabove), each Defendant was under a duty to exercise due care in communicating with Plaintiff, or authorizing others to communicate with Plaintiff, concerning facts related to her investments.

264. All Defendants breached said duty with respect to Plaintiff's investment in the Hedge Fund.

265. Plaintiff reasonably relied upon such statements.

266. Plaintiff suffered pecuniary loss as a proximate result of such negligent misrepresentations.

267. All Defendants failed to curb and correct deceptive sales practices and correct such misrepresentations, despite a duty to Plaintiff, as a prospective (and later actual) security-holder, to do so.

268. Industry and regulatory standards, including, without limitation, NASD rules, Federal and State securities laws, rules and regulations required full disclosure by Defendants of the facts withheld from Plaintiff.

269. The conduct of Defendants was wanton and recklessly ignored the risk of substantial harm to Plaintiff and others similarly situated.

270. Plaintiff suffered substantial emotional harm and injury as a result of Defendants' misrepresentations.

WHEREFORE, Plaintiff demands all damages proximately caused by such negligent misrepresentation, together with punitive damages, reasonable attorney's fees, costs of suit and such other relief as the Court may deem just.

## COUNT XIII
## LIABILITY UNDER SECTION 552(1) OF THE RESTATEMENT (2d) OF TORTS

### Plaintiff vs. All Defendants

271. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 270.

272. All Defendants, directly or through agents, misrepresented to Plaintiff the propriety, suitability and performance of the Hedge Fund Investments.

273. The aforesaid representations, as supplied by said Defendants for the guidance of Plaintiff, were false.

274. Said Defendants failed to exercise reasonable care or competence in obtaining or communicating to Plaintiff accurate information relating to the propriety, suitability and performance of the Hedge Fund Investments.

275. The aforesaid representations, as supplied by said Defendants for the guidance of Plaintiff, were false.

276. Said Defendants failed to exercise reasonable care or competence in obtaining or communicating accurate information to Plaintiff regarding the nature of, and Plaintiff's need for, the Hedge Fund Investments and the financial planning services offered by Defendants TIC, Vricella, Faiola, PCG, NSAM, NSIG, Ianieri, Pham and Wolfe.

277. All Defendants had a duty to provide truthful and accurate information to Plaintiff and Defendants materially breached such duty.

278. Plaintiff justifiably relied upon the aforesaid information to her detriment.

279. All Defendants are liable to Plaintiff pursuant to Section 552(1) of the Restatement (Second) of Torts which provides as follows:

> **One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to the liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.**

WHEREFORE, Plaintiff demands all damages proximately caused by such negligent misrepresentation, costs of suit, and such other relief as the Court may deem just.

## COUNT XIV
## NEGLIGENT SUPERVISION

### Plaintiff vs. Defendants TIC, NSIG, NSAM, DeVito, Wright, Vricella, Ianieri, Pham and Wolfe

280. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 279.

281. Defendants TIC, NSIG, and NSAM had a duty to establish, maintain and enforce (and, as officers of NSIG, Defendants Ianieri, Pham and Wolfe had a duty to establish, maintain and

enforce) reasonable supervisory procedures regarding the sale of the Hedge Fund Investments and the trading of securities on behalf of the Hedge Fund, and said Defendants had a duty to establish, maintain and enforce reasonable supervisory procedures regarding the financial and investment planning services that Faiola and Vricella provided to Plaintiff and to the Hedge Fund.

282.   Faiola and Vricella, at the urging of TIC, used the name and logo of TIC to promote sales of securities, including the Hedge Fund Investments, and attempted to engender the confidence of Plaintiff and others by including references to TIC in monthly account statements that expressly represented that the Hedge Fund Investments were issued through TIC and induced Plaintiff to reasonably believe that TIC supervised preparation of said statements.

283.   To the extent that Faiola and Vricella committed statutory, regulatory and common law wrongs as alleged herein outside the scope of their employment and duties, TIC, DeVito, Wright, Vricella, NSIG, NSAM, Ianieri, Pham and Wolfe, given their knowledge of such conduct, had a duty to Plaintiff to prevent it.

284.   To the extent that Faiola committed statutory, regulatory and common law wrongs as alleged herein outside the scope of his employment and duties, Vricella, given his knowledge of such conduct, had a duty to Plaintiff to prevent it.

285.   Said Defendants materially breached their supervisory duties.

286.   Said Defendants were negligent in breaching the foregoing duties.

287.   As a direct and proximate result of said Defendants' negligent breach of their respective supervisory duties, Plaintiff suffered damages in excess of $1,000,000.00.

WHEREFORE, Plaintiff demands all damages proximately caused by such negligence, costs of suit, and such other relief as the Court may deem just.

## COUNT XV
## WILLFUL AND WANTON NEGLIGENCE AND RECKLESS DISREGARD FOR PLAINTIFF'S RIGHTS
### Plaintiff vs. All Defendants

288.   Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 287.

289.   All Defendants were willfully and wantonly negligent and recklessly disregarded Plaintiff's rights in breaching their duties of due care to Plaintiff as alleged in Plaintiff's various claims and Counts for negligent misrepresentation, negligent misrepresentation under Section 552(1) of the Restatement (2d), Torts, and negligent supervision, and to the extent that the

averments in this Count are required to be included within said Counts, rather than stated as a separate claim, they are deemed incorporated therein.

290. As a direct and proximate result of Defendants' willful and wanton negligence and reckless disregard for Plaintiff's rights, Plaintiff suffered compensatory losses in excess of $1,000,000.00 plus interest, together with serious emotional harm.

291. The willfully and wantonly negligent conduct of Defendants in permitting, perpetrating and/or carrying out their scheme to defraud Plaintiff of her funds was outrageous, malicious, willful, wanton and in reckless disregard of the rights of Plaintiff and the investing public, and is not to be tolerated in a civilized society.

WHEREFORE, Plaintiff demands all damages proximately caused by such willful and wanton negligence, costs of suit, and such other relief as the Court may deem just.

### COUNT XVI
### UNJUST ENRICHMENT

**Plaintiff vs. All Defendants**

292. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 291.

293. Defendants have been unjustly enriched at Plaintiff's expense as a result of their receipt of Plaintiff's funds and other consideration derived from purchases made by Plaintiff.

WHEREFORE, Plaintiff demands all damages proximately caused by such unjust enrichment, including, without limitation, disgorgement of all commissions and fees, together with costs of suit and such other relief as the Court may deem just.

### COUNT XVII
### CONVERSION

**Plaintiff vs. All Defendants**

294. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 293.

295. Defendants have converted Plaintiff's funds to their own unlawful use and fraudulently deprived Plaintiff of the use of such funds through concealment without her informed knowledge and consent and without legal justification.

296. The conduct of said Defendants, described above, in perpetrating and carrying out their scheme to defraud Plaintiff of her funds and the conversion of those funds was outrageous,

malicious, willful, wanton and in reckless disregard of the rights of Plaintiff and the investing public.

WHEREFORE, Plaintiff demands all compensatory damages proximately caused by such conversion, together with punitive damages, reasonable attorneys fees, costs of suit, and such other relief as the Court may deem just.

## COUNT XVIII
## EQUITABLE FRAUD and RESCISSION

### Plaintiff vs. All Defendants

297.  Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 296.

298.  As alleged herein, Defendants, directly and through agents and control persons, fraudulently misrepresented to Plaintiff that Plaintiff was purchasing investment products and financial services, including the Hedge Fund Investments, appropriate for Plaintiff's needs.

299.  The Hedge Fund Investments had characteristics and values said Defendants did not adequately disclose to Plaintiff, which were inconsistent with the parties' agreement, as alleged above, and wholly unsuitable to the Plaintiff's investment objectives, risk tolerance and needs.

300.  As alleged herein, Plaintiff was fraudulently induced by said Defendants to enter into all of the transactions at issue as a result of said Defendants' material misrepresentations, fraud, deceit and omissions.

301.  As a result of said Defendants' conduct, Plaintiff is entitled to rescission of all contracts and transactions described herein under equitable principles as well as under federal, Pennsylvania and New Jersey securities laws.

WHEREFORE, Plaintiff demands damages, including return of her $1,000,000.00 in Hedge Fund Investments, as well as the excessive and unreasonable fee amounts paid by Plaintiff and all consequential damages, including taxes, that would not have been paid but for Defendants' unlawful acts and omissions, so as to place her in the investment position she would enjoy if she had not been deceived into investing in said Defendants' grossly inappropriate, unsuitable and fraudulent investment products.

## COUNT XIX
## CIVIL CONSPIRACY

### Plaintiff v. All Defendants

302. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 301.

303. There was a civil conspiracy among the Defendants to offer to sell and to sell grossly unsuitable securities to Plaintiff through the use of material misstatements and omissions of material fact.

304. Plaintiff, prior to the commission by said Defendants of the egregious unlawful acts herein set forth, and at all times relevant herein, was innocent, unsophisticated and inexperienced as an investor, relying upon the purported expertise, reputation and representations and warranties of said Defendants herein.

305. Said Defendants, and each of them, acting in concert in the form of a conspiracy, maliciously intended to injure Plaintiff by fraudulently inducing Plaintiff to invest in the Hedge Fund Investments. At the time of said Defendants' conduct, said Defendants had, or should have had, full knowledge that (a) the Hedge Fund Investments were wholly unsuitable and inappropriate for Plaintiff's investment requirements, (b) they were offered for sale and sold through the use of false and misleading sales materials and practices, and (c) none of said Defendants had complied with Pennsylvania law relating to the sale of such securities and disclosures relating thereto.

306. In pursuit of the foregoing illegal conspiracy as aforesaid, and in pursuit and execution of their conspiracy, said Defendants herein concealed the true state or status and risks of the Hedge Fund from Plaintiff.

307. The conduct of said Defendants herein in perpetrating and carrying out their schemes to defraud Plaintiff of her funds and the conversion of those funds was outrageous, malicious, willful, wanton and in reckless disregard of the rights of Plaintiff and the investing public.

WHEREFORE, Plaintiff is entitled to judgment with respect to each statutory and common law wrong committed pursuant to said conspiracies, all as alleged herein, and to all damages proximately caused thereby, together with costs of suit and such other relief as the Court may deem just.

## COUNT XX
## NEW JERSEY UNIFORM SECURITIES ACT

### Plaintiff vs. All Defendants

308.  Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 307.

309.  All Defendants conduct business in the State of New Jersey as investment advisors, broker-dealers, securities sales agents, or officers and controlling persons of same, and are subject to the provisions of the New Jersey Securities Act ("NJSA").

310.  All Defendants employed devices, schemes and artifices to defraud, made untrue statements of material fact, omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading and engaged in acts, practices and a course of business which operated as a fraud or deceit upon the Plaintiff in connection with the purchase or sale of the Hedge Fund Investments, in violation of N.J.S.A. 49:3-52 and 49:3-71.

311.  Defendants TIC, ICF, DeVito, and Wright were and are controlling persons of Defendants PCG, Vricella and Faiola, and are responsible, jointly and severally, for said violations of New Jersey law under N.J.S.A. 49:3-71(d).

312.  Defendants TIC, PCG, NSIG, NSAM, Ianieri, Pham, Wolfe, Vricella and Faiola engaged in the business of advising others, for compensation, either directly or through publications or writings, as to the value of securities, or as to the advisability of investing in, purchasing or selling securities, and, for compensation and as a part of a regular business, issued or promulgated analyses or reports concerning securities.  Said Defendants were and are investment advisors to the Hedge Fund, and, in that capacity, willfully violated the NJSA as set forth herein, in violation of N.J.S.A. 49:3-71(a)(5)(i).

313.  All Defendants materially aided in the wrongful conduct of Vricella and Faiola alleged herein, and are liable to Plaintiff, *inter alia*, under N.J.S.A. 49:3-71(d).

314.  Plaintiff suffered a net loss with respect to her investment in the Hedge Fund, and suffered a net loss as a result of such investment advice rendered, directly and indirectly, by Defendants, taking into account all transactions by Plaintiff in Hedge Fund interests within one year of said investment and said investment advice.

WHEREFORE, Plaintiff demands judgment against all Defendants for damages, costs of suit, and such other relief as the Court may deem just.

## COUNT XXI
## VIOLATION OF NEW JERSEY
## CONSUMER FRAUD ACT

### Plaintiff vs. All Defendants

315. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 314.

316. All Defendants provided "merchandise" to Plaintiff within the meaning of such term under N.J.S.A. 56:8-1(c) through the rendering of investment advisory, brokerage and/or financial planning and management services ("Services").

317. All Defendants are "persons" within the meaning of such term under N.J.S.A. 56:8-1(d).

318. All Defendants engaged in the "sale" of merchandise to Plaintiff within the meaning of such term under N.J.S.A. 56:8-1(e).

319. In providing merchandise to Plaintiff, including, without limitation, the Services, Defendants acted, used and employed unconscionable commercial practices, deception, fraud, false pretenses, false promises and misrepresentations with regard to Plaintiff.

320. Defendants knowingly concealed, suppressed and omitted material facts with regard to the Services provided to Plaintiff with the intent that Plaintiff rely upon such concealment, suppression and omissions in connection with Plaintiff's procurement of and payment for the Services.

321. Plaintiff brings this private action against all Defendants pursuant to N.J.S.A. 56:8-19 for an award equal to three-fold the damages sustained by Plaintiff, together with reasonable attorneys' fees, filing fees and other reasonable costs of suit as provided therein.

WHEREFORE, Plaintiff demands judgment against all Defendants for damages, costs of suit, and such other relief as the Court may deem just.

## COUNT XXII
## SUCCESSOR IN INTEREST LIABILITY

### Plaintiff v. ICAS

322. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 321.

323. In accordance with the ICAS Form ADV filed with the SEC in May of 2006 (attached as Exhibit 2), Defendant ICAS is an investment advisory firm conducting an investment advisory business at the same location as Defendant TIC.

324. According to the ICAS Form ADV, Defendant ICAS is an affiliate of Defendant TIC under the control of Defendants ICF, DeVito, Wright and another individual.

325. According to the ICAS Form ADV, Defendant ICAS had between one and five employees (other than clerical workers) at the time of the ICAS Form ADV filing.

326. On information and belief, Defendant ICAS is a successor in interest to certain accounts and other assets of TIC and provides investment advisory services through professionals registered with both ICAS and Defendant TIC.

327. As of the date of filing this Complaint, TIC, PCG and Vricella continue to unlawfully manage certain securities in Plaintiff's account (see Exhibit 16) despite Plaintiff's demand to have said securities transferred to another financial advisor.

328. In light of the foregoing, ICAS is jointly and severally liable with Defendants Vricella and TIC and TIC's respective controlling persons, Defendants ICF, DeVito and Wright, for all of Plaintiff's damages and losses accrued and accruing as of the commencement of business by ICAS.

WHEREFORE, Plaintiff demands judgment against all Defendants for damages, costs of suit, and such other relief as the Court may deem just.


LAW OFFICES OF HENRY IAN PASS


By:_____

Henry I. Pass, Esq.
Attorney I.D. #21437
401 E. City Avenue, Suite 200
Bala Cynwyd, PA 19004
610-660-8001 (phone)
610-660-8004 (fax)
Email: hip@hipesq.com

Attorney for Plaintiff

Dated:  June 8, 2006

## EXHIBIT LIST

| Exhibit No. | Description |
| --- | --- |
| 1 | TIC's Form ADV as filed with the SEC |
| 2 | ICAS' Form ADV as filed with the SEC |
| 3 | Private Offering Memorandum |
| 4 | TIC's Promotional Material from June 2005 *Financial Advisor* Magazine |
| 5 | Excerpt from TIC's website material |
| 6 | Summary Statements from Defendants PCG and TIC |
| 7 | New Client Record of Kimberly Findlay |
| 8 | Documents Evidencing Liquidation of Cincinnati Financial Corp. Shares |
| 9 | Confirmation Evidencing First Hedge Fund Investment |
| 10 | Cover page of Private Offering Memorandum |
| 11 | Hedge Fund Subscription Agreement signature page |
| 12 | NSIG Statements reflecting First Hedge Fund Investment and Second Hedge Fund Investment |
| 13 | Hedge Fund's IRS Form K-1 |
| 14 | Documents Evidencing Transfer of UGMA Account |
| 15 | NASD Notice to Members 0307 |
| 16 | Documents Evidencing Retention of Plaintiff's Securities Despite her Requests to Transfer Same to Another Advisor |